IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RAFAEL D. RIVERA-FIGUEROA,

    Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 11-2063 (MEL)

**OPINION AND ORDER**

**I.     PROCEDURAL HISTORY**

Rafael Rivera ("plaintiff" or "claimant") was born in 1970 and has a bachelor's degree. (Tr. 22, 132).  Plaintiff was in the Army National Guard until February 2008, and was employed as a security guard until September 2006.  (Tr. 87).  On January 12, 2009, plaintiff filed an application for Social Security disability benefits, alleging disability due to depression, a cervical and lumbar condition, migraines, gastritis, and hearing loss.[1]  (Tr. 12, 252).  The alleged onset date of the disability was February 11, 2008, while the end of the insurance period will be December 31, 2013.  (Tr. 14).  Plaintiff's application was denied initially and upon reconsideration.  (Tr. 12).  Plaintiff made a timely request for a hearing, but waived his right to be present at the hearing.  Plaintiff was represented by counsel at the hearing, which took place on January 19, 2010, before an Administrative Law Judge ("ALJ").  A vocational expert provided testimony at the hearing.  The ALJ rendered a decision on January 28, 2010, denying

---

[1] The Administrative Law Judge determined that plaintiff had the following severe impairments: a mood disorder, right carpal tunnel syndrome, herniated nucleus pulposus at C4-C5 and C5-C6 levels, herniated nucleus pulposus at L5-S1 with radiculopathy, and obesity. (Tr. 15).  Correspondingly, she concluded that plaintiff's alleged migraines, gastritis, and hearing loss, as well as his left knee pain and sinusitis, did not constitute severe impairments. (Tr. 15–16).  These determinations do not appear to be contested by plaintiff.

plaintiff's claim.  The Appeals Council denied plaintiff's request for review on August 26, 2011.

(Tr. 1).  Therefore, the ALJ's decision became the final decision of the Commissioner of Social

Security (the "Commissioner" or "defendant").

On October 27, 2011, plaintiff filed a complaint seeking review of the ALJ's decision

pursuant to 42 U.S.C. § 405(g), alleging that it was not based on substantial evidence.  (D.E. 1).

On April 10, 2012, defendant filed an answer to the complaint and a certified transcript of the

administrative record.  (D.E. 8; 9).  Both parties have filed supporting memoranda.  (D.E. 16;

19).  For the reasons set forth below, the Commissioner's decision is affirmed.

## II.     LEGAL STANDARD

### A.      Standard of Review

Once the Commissioner has rendered his final determination on an application for

disability benefits, a district court "shall have the power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or

without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The court's review is limited

to determining whether the ALJ employed the proper legal standards and whether his factual

findings were founded upon sufficient evidence.  Specifically, the court "must examine the

record and uphold a final decision of the Commissioner denying benefits, unless the decision is

based on a faulty legal thesis or factual error."  López-Vargas v. Comm'r of Soc. Sec., 518 F.

Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76

F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner … as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971).  The standard requires "'more than a mere

scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's fact findings are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).  Moreover, a determination of substantiality must be made based on the record as a whole.  See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence."  Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B.      Disability under the Social Security Act**

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled within the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987).  An individual is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according a five-step sequential process.  20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42.  If it is determined that the claimant is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step.  At step one, it is determined whether the claimant is working and thus engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, then disability benefits are denied.  20 C.F.R. § 404.1520(b).  Step two requires the ALJ to determine whether the claimant has "a severe medically determinable physical or mental impairment" or severe combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If he does, then the ALJ determines at step three whether the claimant's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, then the claimant is conclusively found to be disabled.  20 C.F.R. § 404.1520(d).  If not, then the ALJ at step four assesses whether the claimant's impairment or impairments prevent him from doing the type of work he or she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  If the ALJ concludes that the claimant's impairment or impairments do prevent him from performing her past relevant work, the analysis then proceeds to step five.  At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[2] combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied.  20 C.F.R. § 404.1520(g).

---

[2] An individual's residual functional capacity is the most that he or she can do in a work setting despite the limitations imposed by her mental and physical impairments.  20 C.F.R. § 404.1545(a)(1).

Under steps one through four, the plaintiff has the burden of proving that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

III.   MEDICAL EVIDENCE

A.   Physical Conditions

An MRI of plaintiff's lumbar spine conducted on January 12, 2005, revealed paravertebral muscle spasm with anterior multilevel multilevel spondylotic changes, and diffuse disc bulges with mild thecal impingement and no evidence of stenosis. (Tr. 317). Plaintiff was involved in an accident on October 3, 2007, while he was in the U.S. Army, which later caused him to "complain of sudden neck pain, and lower back pain." (Tr. 522). Plaintiff received an MRI on December 17, 2007, which revealed a small right herniated nucleus pulposus at the L5-S1 level without evidence of edema or fracture. (Tr. 321, 675). In May 2008—that is, after the alleged onset disability date on February 11, 2008—electrodiagnostic studies demonstrated L3-L5 radiculopathy. (Tr. 320). An electromyographic examination performed on August 19, 2008, revealed mild right carpal tunnel syndrome, but no active cervical radiculopathy. (Tr. 327). Plaintiff was prescribed a wrist splint. (Tr. 326).[3]

On December 20, 2008, Dr. Joaquín Hernández ("Dr. Hernández") completed a physical examination of plaintiff. (Tr. 521–25). He noted that plaintiff was continuing to experience constant neck and back pain, mild tenderness, and muscle spasms of the cervical region.

---

[3] Evidence outside of the disability insurance period is ordinarily irrelevant but for those instances in which it can shed some light on claimant's conditions during said period of time. Cf. Padilla Pérez v. Sec'y of Health & Human Servs., 985 F.2d 552, 1993 WL 21064, at *5 (1st Cir. 1993) (unpublished) ("Medical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question whether claimant's impairment reached disabling severity *before* his insured status expired." (emphasis in original)).

Nonetheless, plaintiff had a normal gait, full muscle strength, intact sensation, an adequate heel-and-toe walk, and a negative straight leg raise test. Dr. Hernández cited a neurosurgical evaluation from October 6, 2008, which had recommended conservative treatment and pain management. Dr. Hernández determined that plaintiff was not a candidate for surgery. Plaintiff's medical conditions were stable, but he was unable to perform required military duties. Dr. Hernández noted that plaintiff had a good prognosis if he would avoid strenuous exercise and follow a good home therapy program.

Dr. Alfredo Pérez Canabal ("Dr. Pérez") conducted a neurological examination on April 2, 2009. (Tr. 352–56). Plaintiff had been experiencing low back pain radiating to his left leg and related numbness, and cervical pain radiating to both shoulders and arms. Plaintiff's Phalen and Tinel test results were both positive. Dr. Pérez's diagnostic impression was that plaintiff had right carpal tunnel syndrome, cervical myositis, and lumbosacral radiculopathy.

Dr. G. Friedman ("Dr. Friedman"), a state agency medical consultant, evaluated the medical evidence concerning plaintiff's physical limitations and completed a physical residual functional capacity assessment. (Tr. 389-96). Dr. Friedman determined that plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently. Over the course of a work day, plaintiff could stand or walk for at least 2 hours and sit for 6 hours. Plaintiff could occasionally climb ramps or stairs, balance, stoop, or crouch, but never climb ladders, ropes, or scaffolds. Dr. Friedman concluded that plaintiff was limited to handling and fingering "frequently" rather than on an "unlimited" basis. (Tr. 392). Dr. Gilberto Fragoso ("Dr. Fragoso") affirmed Dr. Friedman's assessment on September 15, 2009. (Tr. 765).

On July 13, 2009, Dr. Hernández completed a Social Security Administration questionnaire regarding plaintiff's physical limitations. (Tr. 406–10). Plaintiff's signs and

symptoms included tenderness, muscle spasm, a positive straight leg raise test, and impaired sleep and appetite.  Dr. Hernández determined that plaintiff could use his right hand and arm for grasping, fine manipulations, and reaching for only 1 hour in an 8-hour workday.  Dr. Hernández also concluded that plaintiff was able to walk for 25 feet without rest or severe pain; sit, stand, or walk for a total of 2 hours per workday; occasionally lift less than 10 pounds; rarely twist, stoop, crouch, or climb; and never look down with sustained flexion of his neck.  The questionnaire indicated that plaintiff had significant limitations with reaching, handling, or fingering; that plaintiff's pain and other symptoms would frequently interfere with his attention and concentration; and that plaintiff would be required to shift positions and take unscheduled breaks at work.

### B.      Mental Conditions

Dr. Alberto Rodríguez Robles ("Dr. Rodríguez"), a consultative psychiatrist, evaluated plaintiff on May 12, 2009.  (Tr. 132–35).  Plaintiff stated that he could not concentrate, had "no interest in anything," and experienced difficulty sleeping and pessimistic thoughts.  (Tr. 132). Although plaintiff had preserved memory, average intellectual abilities, and full orientation, he displayed psychomotor retardation, restricted affect, depressed mood, self-deprecating ideas, and diminished attention and concentration.  Dr. Rodríguez diagnosed plaintiff with a severe major depressive disorder and a pain disorder, gave him a poor prognosis, and determined that he was not able to handle his funds.

Dr. Jeanette Maldonado ("Dr. Maldonado"), a state agency psychiatrist, evaluated the medical evidence concerning plaintiff's mood disorder and completed a psychiatric review technique and a mental residual functional capacity assessment.  (Tr. 368–87).  She determined that plaintiff had moderate difficulties in maintaining concentration, persistence, and pace.  The only categories which Dr. Maldonado concluded that plaintiff was markedly limited were his

abilities to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions, to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting. Dr. Maldonado's assessment was affirmed on September 14, 2009, by Dr. Carmen Piñeiro.  (Tr. 763).

Dr. Dayra Fernández-Demorizi ("Dr. Fernández") with the Veterans Administration conducted a screening of mental disorders on June 1, 2009.  (Tr. 726–33).  Plaintiff had a clean appearance; unremarkable psychomotor activity, speech, and thought process; cooperative attitude; appropriate affect; and normal memory.  During the screening, plaintiff was able to do calculations involving serial sevens and to spell a word forwards and backwards.  Plaintiff experienced no homicidal or suicidal thoughts or problems with activities of daily living. Plaintiff reported that he was experiencing crying spells, insomnia, poor social relations, hostility, and agitation.  Dr. Fernández observed that plaintiff "tried very hard to look depressed and ill."  (Tr. 729).  Although Dr. Fernández indicated that plaintiff had a depressive disorder, she determined that plaintiff's symptoms were mild and would not interfere with occupational functioning.  Dr. Fernández concluded that plaintiff was mentally competent, oriented, and capable of managing his financial affairs.  She also noted that plaintiff was responding to his medications.  Dr. Fernández assigned plaintiff a Global Assessment of Functioning ("GAF") of 70.[4]

---

[4] The GAF "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) [hereinafter DSM–IV], quoted in Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004). It "considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  DSM–IV, at 34 (brackets omitted), quoted in Echandy-Caraballo v. Astrue, 2008 WL 910059, at *4 n.7 (D.R.I. Mar. 31, 2008).  "A GAF of 61 to 70 reflects mild symptoms such as depressed mood, or some difficulty in social, occupational, or school functioning."  Lisi v. Astrue, Civ. No. 11-30163 (DPW), 2012 WL 1853589, at *5 (D. Mass. May 18, 2012) (citing DSM–IV, at 32).

On July 8, 2009, Dr. Ricardo J. Junco ("Dr. Junco") with the U.S. Army Health Clinic, who had been treating plaintiff for over a year, completed a psychiatric evaluation and a mental residual functional capacity assessment. (Tr. 136–45, 418–22). He diagnosed plaintiff with depressive disorder and obsessive compulsive disorder. Dr. Junco concluded that plaintiff had marked limitations in several categories, including his abilities to understand, remember, and carry out detailed instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without distraction; and interact appropriately with the general public. Nevertheless, plaintiff had full orientation, adequate attention and concentration, intact memory, regular judgment, and no suicidal or homicidal ideas. Plaintiff's thought process was coherent, relevant, and logical. Dr. Junco assigned plaintiff a GAF of 68.[5]

## IV.   ANALYSIS

The primary objection raised by plaintiff is that the ALJ's step five analysis was not based on substantial evidence because it did not properly give weight to the opinions of the treating or examining physicians.[6] As such, plaintiff argues, the ALJ's determination of plaintiff's RFC and the hypothetical posed to the vocational expert were erroneous.

In a Social Security disability benefits case, an ALJ should generally give more weight to a treating physician's opinions, because such doctors "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(d)(2). An ALJ, however, may disregard them upon a showing of good cause: "(1) that they are brief and conclusory, (2) not supported by medically acceptable clinical

---

[5] As discussed above, a GAF between 61 and 70 "reflects mild symptoms … or some difficulty in … functioning." Lisi, 2012 WL 1853589, at *5.

[6] Plaintiff also asserts that the ALJ found that "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." (D.E. 16, at 13). To the contrary, however, the ALJ actually found that plaintiff had several severe impairments, including a mood disorder, right carpal tunnel syndrome, herniated nucleus pulposus at C4-C5 and C5-C6 levels, herniated nucleus pulposus at L5-S1 with radiculopathy, and obesity. (Tr. 15).

laboratory diagnostic techniques, or (3) are otherwise unsupported by the record." Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007).  An ALJ should "'always give good reasons' for the weight [she] gives a treating source opinion."  Soto-Cedeño v. Astrue, 380 F. App'x 1, 3 (1st Cir. 2010) (quoting 20 C.F.R. § 404.1527(c)(2)).

Plaintiff first contends that it was erroneous for the ALJ to emphasize that he was coherent, logical, relevant, and fully oriented, because these attributes "are not requisites to meet the diagnostic criteria of a major depressive disorder."  (D.E. 16, at 12).  Plaintiff seems to misunderstand the ALJ's purpose in including these observations.   The ALJ specifically concluded that plaintiff had the severe impairment of "a mood disorder secondary to his physical condition" during the relevant period.  (Tr. 15, 17).  The ALJ also referred to the disorder as a "depressive disorder."  (Tr. 18).   Thus, the ALJ did not refer to evidence that plaintiff was coherent, logical, relevant, and fully oriented in order to demonstrate that plaintiff did not have a mood disorder or a depressive disorder.  Rather, it serves as evidence that plaintiff, despite having a mood disorder, retained the mental capacity to "understand, remember and carry out simple and detailed instructions; concentrate for more than two hours period, tolerate routine supervision, make work-related decision and interact with peers in an acceptable manner."  Id.

It is certainly true, as plaintiff states, that "a patient's memory and his ability to pay attention and concentration, are different considerations."  (Tr. 12–13).  This was not, however, "the only alleged inconsistency regarding the claimant's emotional condition," as plaintiff asserts.  (D.E. 16, at 13).  The ALJ did not point to conflicting findings by Dr. Junco regarding memory, attention, and concentration as an example of an inconsistency at all.[7]  Rather, the ALJ's principal concern with the medical evidence provided by Dr. Junco was that his summary

---

[7] In fact, Dr. Junco found that plaintiff had both "intact" memory and "adequate" attention and concentration.  (Tr. 144).

conclusions were inconsistent with his findings.  For instance, Dr. Junco determined that plaintiff had marked limitations in several categories, including his ability to complete a normal workday and workweek without psychologically-induced interruptions, even though, in the ALJ's words, "the claimant's cognitive functioning was reported essentially normal."  (Tr. 22).  The ALJ specifically pointed to plaintiff's adequate attention and concentration and intact memory as examples of his normal cognitive functioning.[8]

The ALJ concluded that plaintiff had the mental RFC to understand, remember, and carry out simple and detailed instructions; to concentrate for a period of more than two hours; to tolerate routine supervision; to make work-related decisions; and to interact with his peers in an acceptable manner.  (Tr. 18).  Plaintiff argues that the ALJ, in coming to this determination, improperly discounted Dr. Rodríguez's and Dr. Junco's evidence regarding his mental limitations.  (D.E. 16, at 15).  The ALJ noted that plaintiff's cognitive functioning "did not appear compromised by his depression."  (Tr. 17).  In support, the ALJ pointed out that plaintiff appeared cooperative, alert, and fully oriented, and had preserved memory, average intellectual abilities, adequate knowledge, and no thought disorders.  Though Dr. Rodríguez determined that plaintiff had diminished attention and concentration, plaintiff was still able to perform simple arithmetic.  Moreover, although Dr. Rodríguez concluded that plaintiff was not capable of handling his funds, the ALJ pointed out that plaintiff himself reported that he was able to pay bills, count change, and handle a savings account.  (Tr. 74, 76).

As discussed above, the ALJ explained her concerns regarding the inconsistencies between Dr. Junco's findings and conclusions.  Moreover, the ALJ did not disregard Dr. Junco's determinations entirely; rather, she explicitly "assigned some weight to this opinion."  (Tr. 22).  Notably, Dr. Junco assigned plaintiff a GAF of 68, a score which the ALJ determined "suggest[s]

---

[8] The ALJ also noted plaintiff's "average" judgment, lack of hallucinations, and GAF of 68.

mild symptoms such as a depressed mood and mild insomnia or some difficulty in social, occupational or school functioning, but that [plaintiff] is generally able to function pretty well and has some meaningful interpersonal relationships." (Tr. 22).

Plaintiff also points to his depression screening conducted by Dr. Fernández at the Veterans Administration as evidence of his mental impairment. (D.E. 16, at 13). Although the ALJ determined that the screening "suggested moderately severe depression," she also noted that the progress notes indicated that plaintiff appeared alert, fully oriented, cooperative, and not in distress. (Tr. 20). Dr. Fernández assigned plaintiff a GAF of 70 and determined that plaintiff's symptoms due to his depressive disorder were mild and would not interfere with his occupational functioning. (Tr. 732). Thus, plaintiff has failed to show that the ALJ's mental RFC determination was not supported by substantial evidence.

For plaintiff's physical RFC, the ALJ determined that plaintiff was able to perform light work,[9] except that he could stand or walk for at least 2 hours and sit for 6 hours in a workday; could occasionally climb ramps or stairs, balance, stoop, and crouch; had "frequent limitations" in fingering and handling; and could perform overhead reaching. (Tr. 18). Plaintiff expresses concern that the ALJ's determination did not adequately consider the opinion of Dr. Hernández, plaintiff's treating physician. (Tr. 406–10). Dr. Hernández concluded that plaintiff was able to sit, stand, or walk for 2 hours per workday; occasionally lift less than 10 pounds; and rarely twist, stoop, crouch, or climb. Dr. Hernández had also determined that plaintiff would have to alternate his positions and take unscheduled breaks at work. The ALJ explained, however, that Dr. Hernández's findings concerning plaintiff's limitations were inconsistent with his own physical examinations. (Tr. 21). Although Dr. Hernández indicated that plaintiff must use a

---

[9] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). A job involving light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id.

cane or other assistive device, he had also observed that plaintiff had a normal gait, full muscle strength, an adequate heel-and-toe walk, no sensory deficits, and negative straight leg raise tests. (Tr. 409, 524). Moreover, Dr. Friedman noted that plaintiff had not brought a cane to his consultative examination or to his military evaluation. (Tr. 391). Dr. Hernández noted that plaintiff was in no acute distress, was not a candidate for surgery, was being treated conservatively, and had a good prognosis. (Tr. 522–24). Certainly, as discussed above, an ALJ should in general give more weight to the opinions of a treating physician. Nevertheless, it was appropriate in this case for the ALJ to determine that Dr. Hernández's conclusions about plaintiff's physical limitations should be accorded reduced weight.

The ALJ also considered the reports of state agency medical consultants Dr. Friedman and Dr. Fragoso in coming to his physical RFC determination. Often, the reports of non-examining physicians "contain little more than brief conclusory statements or the mere checking of boxes denoting levels of residual functional capacity, and accordingly are entitled to relatively little weight." Berríos López v. Sec'y of Health & Human Services, 951 F.2d 427, 431 (1st Cir. 1991). Dr. Fragoso's summary adoption of Dr. Friedman's RFC determination does not even contain such brief conclusory statements; as such, it should be accorded little weight. Nevertheless, where a report "contains more in the way of subsidiary medical findings to support [the medical consultant's] conclusions concerning residual functional capacity," an ALJ has "further leeway to credit the functional conclusions of the non-examining, non-testifying physician[] as adequate by themselves." Id. at 431–32. As the ALJ noted, although Dr. Friedman did not examine plaintiff, he did "provide[] specific reasons for [his] opinions about [plaintiff's] residual functional capacity." (Tr. 21). He described the incident that induced plaintiff's condition, the nature of plaintiff's injuries, the laboratory and other tests that had been

conducted, and his reasons for discounting plaintiff's need for an assistive device.  As such, there

was substantial evidence to support the ALJ's determination of plaintiff's physical RFC.[10]

## V.   CONCLUSION

Based on the foregoing analysis, the Court concludes that the Commissioner's decision

was based on substantial evidence.  Therefore, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of February, 2013.

s/Marcos E. López
U.S. Magistrate Judge

---

[10] The ALJ determined that, with a Body Mass Index of 33.5, plaintiff had the severe impairment of obesity.  (Tr. 17; see also Tr. 735, 739–41, 744, 746).  Although plaintiff's obesity contributed to his functional limitations, the ALJ concluded that it did not result in limitations in excess of the physical RFC determination.  Nothing in the record has been brought to the attention of the court to suggest that the ALJ erred in reaching this conclusion.